**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANTHONY HUBBARD,

      Petitioner,                      Civil No. 2:08-CV-10034
                                          HONORABLE ARTHUR J. TARNOW

V.

STEVEN RIVARD,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, GRANTING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Anthony Hubbard, ("Petitioner"), presently incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  In his application, Petitioner challenges his conviction for first-degree murder. MICH. COMP. LAWS § 750.316.  For the reasons stated below, the petition for a writ of habeas corpus will be denied.

### I. BACKGROUND

Petitioner was charged with open murder relating to the death of seventeen-year-old Yatasha Bush.  After a four-day trial ending on May 13, 2004, a Jackson County Circuit

---

[1]  When petitioner originally filed his petition for a writ of habeas corpus, he was incarcerated at the Macomb Correctional Facility, but he has since been transferred to the St. Louis Correctional Facility. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 U.S.C. § 2254. Therefore, the Court substitutes Warden Steven Rivard in the caption.

1

Court jury found Petitioner guilty of first-degree premeditated murder. The state trial court sentenced Petitioner to life in prison without the possibility of parole.

Prior to trial, a hearing was held to determine whether the prosecution would be allowed to present prior-bad-acts evidence and to use extra-judicial statements to establish the prior bad acts. The trial court ruled that the prosecution would be allowed to present evidence of Petitioner's relationship with the victim - including the allegation that he prostituted her - to establish a motive for the killing. The court also ruled that the prosecution would be allowed to present testimony that Petitioner had abused other young women to provide an explanation for Shaylene Clark's failure to report Bush's death to the police. Finally, the court ruled that the prosecution would be allowed to use Bush's extra-judicial statements to establish her intent to separate herself from Petitioner.

At trial, the prosecution presented evidence that the body of Yatasha Bush was discovered in an unoccupied house in the City of Jackson on August 28, 2003. She had been dead for some time and her body was badly decomposed. Advanced decomposition of the throat area in comparison to other areas of the body suggested that Bush had sustained an injury to her neck. The amount and location of blood found on the carpeting underneath the body indicated that the cause of death was neck trauma. DNA testing of the victim's panties revealed sperm cells from three different sources, none of which came from Petitioner or Bush's other boyfriend, Randy Hatch.

Bush was seventeen years old at the time of her death. Petitioner, who was in his late thirties, had a dating relationship with Bush. She became pregnant with his child, but prior to her death, Bush told people she had lost the baby.

2

Several weeks before her death, Bush had broken-up with Petitioner and commenced a dating relationship with Randy Hatch, a thirty-nine-year-old truck driver. According to Hatch, he met Bush in the beginning of August of 2003. Bush was staying with her father, and Hatch stayed there with them. Bush told Hatch about her relationship with Petitioner, and she said that she had been pregnant but thought that she had lost the baby.

Shaylene Clark testified that she was a prostitute and drug user. She knew Yatasha Bush from the streets. Clark testified that on or about August 14, 2003, she went to a house with Bush where they did drugs and had sex with the men that were there. Clark also observed Bush being filmed naked. Clark and Bush left on what she believed was August 16, 2003, when Petitioner picked them up. Petitioner drove them to an unoccupied house. On the way, he stopped to get glass pipes for smoking crack cocaine. Clark testified that before they drove off, Petitioner got into an argument with Bush, and after the argument had stopped, he invited them to "check out" his switch blade knife.

Petitioner, Bush, and Clark all smoked crack at the unoccupied house. Clark testified that she smoked "a lot" of cocaine that day. Petitioner and Bush went into the bedroom and had sex. Clark testified that Bush and Petitioner then got into an argument about her having lost the baby and the things she was doing to get money.

Clark testified that the argument suddenly turned violent. Petitioner picked Bush up by the neck and choked her. When Bush tried to run out of the door, Petitioner caught her and pulled out his knife. Bush struggled to get away, but Petitioner was holding her with his arm around her neck. Petitioner pulled out his knife and slid it across her throat without cutting her. Petitioner then told Bush he was going to kill her, and within a minute or two cut her throat.

3

Clark testified that after Bush was cut, Clark ran out of the house and went to a store. She did not tell the people in the store what had happened.  Petitioner arrived at the store a few minutes later wearing the same clothes he had on during the altercation with Bush.

Petitioner called a cab and took Clark to the Best Motel.  Clark testified that during the two weeks between Bush's death and the day her body was found, Clark was with Petitioner every day because he made her stay at the motel with him. Clark also said, however, that she was only with Petitioner at the hotel for two or three days, and that on the day she came into contact with the police she had been away from Petitioner for about a week.  Clark testified that she did not have a clear memory of what exactly had happened after the night Bush was injured or in what order things happened.

Leonard Best, proprietor of the Best Motel, testified to renting Petitioner a room for the night of August 28, 2003. According to his records, that was the only night Petitioner spent at his motel.

Police detective Gary Schuette testified that he received a tip that Shaylene Clark might have information regarding Bush's death. On September 2, 2003, he made a traffic stop of a car in which Clark was a passenger. Clark identified herself as Amanda Swank and was clearly under the influence of drugs.

Detective Schuette testified that on September 2, 2003, Clark told him that all she knew about Bush's death was what Petitioner had told her.  Eventually, Clark admitted to him that she did have some personal knowledge. She said that Petitioner and a woman had picked her and Bush up in a green van. Petitioner then drove them to a house and said it

4

was a good place to crash. Clark said that when she saw Petitioner grab Bush by the throat and start choking her, she got scared, ran out, and went to Bush's father's house.

At another interview, held two days later, Clark said that in addition to choking Bush, Petitioner had also cut her throat.   At another interview four days later, Clark gave differing accounts of her activities after the night Bush was injured.   Schuette testified that on September 4, 2003, Clark identified an individual she said was responsible for Bush's death. She said she did not know his name, but knew him by a nickname.   When he presented her with a photo array, Clark identified Petitioner as the perpetrator.

Petitioner was a police informant at the time of the investigation. Police Officer Anthony Shepard testified that he talked to Petitioner about doing a controlled drug buy and asked him to show up at a particular time at the Jackson Police Department. Before the police started to interrogate Petitioner, Petitioner told the officers that he needed to talk to them "about a body that was found in a house." Petitioner said she was his girlfriend and that he wanted to help with the investigation.

Petitioner was led into an interview room where he was questioned by Detective Schuette.   Petitioner initially denied that he had been in the house with Bush.   Schuette then showed Petitioner a photograph of Bush, and he laid out his theory about how he believed Petitioner had killed her by mistake. Schuette testified that Petitioner responded by saying "F--k it. I'm just going to tell you what happened."  Petitioner then told Schuette that he had picked up Bush and a girl he knew as "Sunshine" from Timmy's house in a borrowed van.  Petitioner then suddenly had a change of heart, said the police could not put him in the house, and they would have to "prove it."

5

Following arguments, instructions and deliberations, the jury found Petitioner guilty of first-degree murder, and he was subsequently sentenced to life imprisonment.

Petitioner filed an appeal of right. His appellate brief raised five claims:

I. The trial judge abused his discretion by allowing the prosecutor to present improper, irrelevant and unfairly prejudicial other bad acts evidence, and by allowing the prosecution to use inadmissible hearsay to establish the other bad acts, in violation of Mr. Hubbard's federal constitutional right of confrontation and his due process right to a fair trial.

II. The prosecutor engaged in substantial and material misconduct, which denied Mr. Hubbard his federal constitutional due process right to a fair trial, inter alia, by failing to inform the presiding judge of all of the other bad acts evidence she intended to present at trial and ignoring the limits the trial judge set on the admission of other bad acts evidence at trial.

III. Reversal is required because trial counsel's deficient performance denied Mr. Hubbard his federal constitutional right to the effective assistance of counsel.

IV. Mr. Hubbard's first-degree murder conviction must be vacated because the evidence presented at trial was not sufficient to permit a reasonable jury to find that the premeditation and deliberation element of that offense had been established beyond a reasonable doubt.

V. The trial judge abused his discretion by denying defense counsel's request to instruct the jury on the lesser offense of voluntary manslaughter.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Hubbard,* No. 256831 (Mich.Ct.App. Dec. 6 2005).

Petitioner attempted to file a late application for leave to appeal in the Michigan Supreme Court, but according to an affidavit filed by the Clerk of the Michigan Supreme Court, it was rejected as untimely on February 1, 2006.

Petitioner then filed a motion for relief from judgment in the trial court. The motion raised eight claims:

I. Defendant's constitutional rights to a fair trail was violated when the trial court allowed the prosecutor to present to the jury testimony from a juvenile detainee, Shaylee Clark, while at the same time violated her rights under both state and federal constitutions.

II. Defendant's constitutional right to due process and to a fair trial were violated when the trial court abused its discretion and it allowed the prosecutor to present improper extraneous and prejudicial other bad acts evidence, and by allowing the prosecutor to use inadmissible hearsay to establish the other acts.

III. Defendant's constitutional right to a fair trial was violated when the trial court found that the premeditation and deliberation elements of first-degree murder had been proven.

IV. The prosecutor clearly engaged in substantial and material misconduct which denied defendant his constitutional right to due process and to the a fair trial.

V. The cumulative errors committed by trial counsel violated defendant's constitutional right to effective assistance of counsel as guaranteed by the Sixth Amendment.

VI. Defendant was denied his constitutional right to the effective assistance of counsel on his appeal of right.

VII. The cumulative effect of the errors committed during defendant's trial require relief because he did not receive a fair trial under both state and federal constitutions.

VIII. Defendant demonstrates both good cause and actual prejudice stemming from the irregularities that support his claims for relief in this post-appeal proceeding.

The trial court denied the motion by opinion dated August 31, 2006. Petitioner filed an application for leave to appeal this decision in the Michigan Court of Appeals. His application raised three claims:

I. The trial court erred in determining that the defendant did not establish proper cause and prejudice in his motion for relief from judgment and this ruling is clearly erroneous and an abuse of discretion.

7

II.  The trial court erred by improperly interpreting the applicable law with regards to the defendant's standing to raise the violation of the rights of juvenile witness, Shaylee Clark.

III. The trial court erred in ruling that the defendant did not meet and/or satisfy the necessary standard in regards to defendant's claim of ineffective assistance of appellate counsel.

The Michigan Court of Appeals denied the application "because defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(d)." *People v. Hubbard*, No. 273749 (Mich. Ct. App. May 3, 2007). Petitioner's application for leave to appeal was denied by the Michigan Supreme Court on the same grounds. *People v. Hubbard*, No. 133993 (Mich. Sup. Ct. September 24, 2007).

In his habeas petition, Petitioner seeks a writ of habeas corpus on the following grounds:

I. The state's use of prior bad acts and hearsay evidence to convict Petitioner violated his Sixth and Fourteenth Amendment rights.

II. Petitioner's Sixth Amendment right to counsel was violated where he was ineffectively assisted by trial counsel.

III. Prosecutorial misconduct deprived defendant of due process of law and a fair trial in violation of the Fourteenth Amendment.

IV. Petitioner's Fourteenth Amendment right to due process of law was violated where there was insufficient evidence substantiating first-degree murder.

V.  Petitioner was denied his constitutional right to effective assistance of counsel on his appeal of right.

VI.  The cumulative effect of the errors committed during defendant's trial violated defendant's Fourteenth Amendment right to due process and a fair trial.

VII. Petitioner's Fourteenth Amendment right to a fair trial and due process of law were violated where the trial court permitted the use of a juvenile detainee's coerced testimony by the prosecution.

8

## II.  STANDARD OF REVIEW

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

9

## III. DISCUSSION

### A. <u>Claims Raised in Petitioner's Appeal of Right</u>

Petitioner's first, second, third, and fourth habeas claims were raised in the Michigan Court of Appeals during his appeal of right. Respondent asserts that review of these claims is barred because although Petitioner presented them to the Michigan Court of Appeals, he failed to timely appeal the court's decision to the Michigan Supreme Court.

Respondent is correct. Petitioner's first four habeas claims are barred from review because of his procedural default. A habeas petitioner procedurally defaults a claim if he fails to raise it in an application for discretionary review with the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim raised in the Michigan Court of Appeals but not in the Michigan Supreme Court during a prisoner's appeal of right cannot be considered in federal habeas review. *See Harris v. Stegall,* 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001).

Under M.C.R. 7.302(C)(3), Petitioner had fifty-six days to file a delayed application for leave to appeal with the Michigan Supreme Court after the Michigan Court of Appeals issued its opinion affirming his conviction. *Rice v. Trippett*, 63 F. Supp. 2d 784, 787 (E.D. Mich. 1999). Petitioner's conviction was affirmed by the Michigan Court of Appeals on December 6, 2005. Petitioner had fifty-six days from that date, or until January 31, 2005, to timely file a delayed application for leave to appeal with the Michigan Supreme Court. According to the affidavit filed by the Michigan Supreme Court Clerk, Petitioner did not attempt to file an application for leave to appeal with the Michigan Supreme Court until approximately February 1, 2006, one day after the deadline had passed. Because

10

Petitioner did not file a timely application for leave to appeal with the Michigan Supreme Court, the claims presented in to the Michigan courts during his appeal of right are procedurally defaulted. *Seeger v. Straub*, 29 F. Supp. 2d 385, 391-92 (E.D. Mich. 1998).[2]

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner's reply brief does not attempt to assert cause to excuse his default. Instead of attempting to establish cause, Petitioner argues that because he is actually innocent, his claims are not subject to the procedural default doctrine.

The "fundamental miscarriage of justice" exception to the procedural default doctrine requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires a petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner does not offer any evidence, let alone reliable new evidence, to demonstrate that his is actually innocent of the crime. The evidence of Petitioner's guilt

---

[2]Petitioner does not raise any issue or argument regarding the reasonableness of the 56-day time limit or the state court's refusal to extent it under any circumstances. And because, as discussed below, Petitioner's claims are nevertheless meritless, the Court has no occasion to discuss the issue *sua sponte.*

included the eye-witness testimony of Clark, who ran out of the unoccupied house just after Petitioner was about to cut the victim's throat. Petitioner simply argues that this evidence of his guilt was not "confirmed." This argument falls far short of the affirmative evidentiary showing of actual innocence necessary to overcome Petitioner's procedural default. Because Petitioner has not presented any new reliable evidence that he is innocent of this crime, no miscarriage of justice results form a failure to review his claim.

Even if Petitioner's claims were not subject to procedural default, however, they would not provide a basis for granting habeas relief.

### 1. Admission of prior-bad-acts and hearsay evidence

Petitioner's first claim asserts that the trial court erred in admitting statements made by the victim to others regarding her fear of Petitioner and her relationship with him. He also claims that the trial court erroneously allowed the prosecutor to present prior-bad-acts evidence concerning Petitioner's prior conduct with the victim.

First, with respect to the hearsay evidence, several lay witnesses testified about statements the victim had made regarding her relationship with Petitioner. The various witnesses testified that they learned from the victim that: (1) she had a boyfriend-girlfriend relationship with Petitioner; (2) that Petitioner was abusive and controlling towards her; (3) that the victim feared Petitioner; (4) that Petitioner assaulted the victim on several occasions; (5) that the victim had prostituted herself and gave the proceeds to Petitioner; (6) that Petitioner gave the victim drugs to help her endure the sex during prostitution; and (7) that the victim was pregnant with Petitioner's child but lost the baby.

The state appellate court found that most of this evidence was relevant to the issue of motive for the killing, and that it was admissible under the "state of mind" hearsay

12

exception.  MICH. R. EVID. 803(3).  The court also found, however, that the hearsay statements regarding Petitioner's abuse and prostitution of the victim did not fall within this exception and should have been excluded on hearsay grounds.  Nevertheless, the court found that reversal was not warranted because the testimony was cumulative to other non-hearsay testimony showing that the victim was subjected to abuse and prostitution at the hands of Petitioner.

The state court reasonably determined that any evidentiary error in the admission of the hearsay testimony regarding Petitioner's abuse of the victim was harmless.  Several witnesses testified at trial regarding their first-hand knowledge of Petitioner's relationship with the victim.  The hearsay evidence regarding the relationship was cumulative to this other evidence.  Moreover, as the Michigan Court of Appeals found, the evidence of Petitioner's guilt was strong.  Clark provided an eyewitness account of the murder that was corroborated by the physical evidence.  She accurately described the abandoned house and the manner the three gained entry, and her description of the location of the wounds comported with the medical evidence.  Petitioner also made a  statement to police, before the victim was positively identified, that he knew it was his girlfriend and that she had been raped and her throat had been slit.  When the questioning officer theorized that Petitioner had been involved, Petitioner broke-down and told the officer that he was going to tell him what happened, but then had a change of heart.  The determination made by the state court that Petitioner was not entitled to relief on this claim was not unreasonable.

Next, Petitioner challenges the non-hearsay portions of the prior-bad-acts evidence on due process grounds.  Petitioner asserts that the evidence of his relationship with the victim was not relevant to motive, and therefore violated his right to a fair trial.  The

13

Michigan Court of Appeals found that the evidence was relevant, noting that evidence about the abusive nature of the relationship, the prostitution, the discord and the like, were relevant to establish a motive for the murder.  Again, this claim cannot be supported by Supreme Court law, and therefore cannot form the basis for granting habeas relief.

The United States Supreme Court has declined to hold that prior-bad-acts evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).  Thus,  Petitioner's underlying complaint that the state trial court violated Michigan Rule of Evidence 404(b) by admitting the other acts evidence is not cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).  Moreover, the determination that the non-hearsay evidence regarding Petitioner's relationship with the victim and his bad conduct with respect to Clark was relevant to establish a motive for the killing and to explain Clark's conduct with the police.  The determination by the state court that this evidence was admissible was not unreasonable, and therefore  Petitioner has not demonstrated entitlement to relief as to this issue.

### 2. Prosecutorial misconduct

Petitioner next asserts that the prosecutor committed several acts of misconduct during his trial.  Specifically, Petitioner contends that the prosecutor wrongfully: (1) elicited testimony that Petitioner sexually assaulted Shaylene Clark following the murder; (2) elicited testimony that Petitioner provided the victim with illegal drugs in violation of a pre-trial order; (3) argued without evidentiary support that Petitioner was the one who introduced drugs and prostitution to the victim; (4) argued that Petitioner used the unborn child to "hold" the victim and that he killed her to teach Clark a lesson; (5) argued that after

14

killing the victim he left her "to rot, just like so much garbage"; and (6) inconsistently arguing both that Petitioner habitually carried a knife and that evidence that Petitioner had a knife on the day of the murder was evidence of premeditation.  The Michigan Court of Appeals reviewed the claims under the plain error standard.  Accordingly, although the state court's discussion of the claims appears to involve a merits review, under Sixth Circuit it does not constitute a merits adjudication that is entitled to the deferential AEDPA standard of review.  *Benge v. Johnson*, 474 F.3d 236, 246 (6th Cir. 2007).

It is well-settled that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The reviewing court's focus is on "the fairness of the trial, not the culpability of the prosecutor."  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (*quoting Serra*, 4 F.3d at 1355).

The Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights.  *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452.  Upon a finding of such impropriety, the court must then look to see if the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: (1) whether the statements tended to mislead the jury or prejudice the accused; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or

accidentally before the jury; and (4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (*citing United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)).   "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett*, 117 F.3d at 964 (citations omitted).   This Court has found that a prosecutor's improper use of evidence may rise to a level so as to deny a defendant his right to fair trial and thereby warrant habeas corpus relief.  *Blackmon v. Booker*, 2010 U.S. Dist. LEXIS 135659 ( E.D. Mich. Dec. 22, 2010) (Prosecutor's comments regarding Petitioner's alleged gang affiliation constituted misconduct and rendered Petitioner's trial fundamentally unfair in violation of constitutional law.)

First, Petitioner asserts that the prosecutor committed misconduct by eliciting evidence that he sexually assaulted Clark after the murder.   The state court found, however, that the evidence was admissible to explain Clark's fear of Petitioner and her failure to report the murder to the authorities.  Petitioner also alleges that the prosecutor improperly elicited testimony that Petitioner provided the victim with illegal drugs.  The state appellate court found that this evidence was admissible to show motive.  Because the state appellate court found that both of these evidentiary items were admissible, the prosecutor's actions could not have amounted to misconduct.  *See Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997).  As the Sixth Circuit explained, "[a] prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).

16

Petitioner next asserts that the prosecutor committed misconduct in his opening statement and closing argument by asserting without adequate evidentiary support that Petitioner was the person who introduced the victim to drugs and prostitution.  Although prosecutors must "refrain from improper methods calculated to produce a wrongful conviction" and may not "assume prejudicial facts not in evidence," *Berger v. United States*, 295 U.S. 78, 88 (1935), they may argue reasonable inferences from the record. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  In this case, Karla Wing and Angela Hayes, acquaintances of the victim, both testified to the dramatic change in behavior and appearance of the victim after she began her relationship with Petitioner.  When Haynes confronted the victim with her decline, the victim told her that she was using drugs and prostituting herself to survive.  The argument that Petitioner introduced the victim to drugs and prostitution amounted to a fair inference based on the testimony of these two witnesses.

Petitioner likewise asserts that the prosecutor unfairly argued that Petitioner used the victim's pregnancy to possess her and that he killed the victim to teach Clark a lesson.  Similar to the previous allegation, these statements were fair inferences to draw from the evidence presented at trial.  Haynes and Albert Bush testified that Petitioner could not accept the victim's desire to end her relationship with him.  They testified that when Petitioner arrived at their homes to look for the victim, she would attempt to separate herself.  Tammy Hurley testified that shortly before the victim's body was found, she heard Petitioner say that he was upset at the victim for leaving him, that he would find her, and that he would take the baby from her.  These witnesses also testified that it appeared to them that Petitioner controlled the victim and would punish her when she defied him.

17

From this testimony, it was reasonable for the prosecutor to draw the inference that Petitioner attempted to control the victim and that he killed her to show Clark - another woman Petitioner was apparently seeking to control - that she should not similarly defy him.

Petitioner next takes issue with the prosecutor's statement in closing argument that Petitioner left the victim's body to rot like garbage. He asserts that this statement was an improper appeal to the jury to sympathize with the victim. A prosecutor may not make closing remarks that are wholly irrelevant to any facts or issues in the case for the purpose of arousing the jury's passions or prejudice. *Viereck v. United States*, 318 U.S. 236, 247-48 (1943). "[A] prosecutor illicitly incites the passions and prejudices of the jury when he calls on the jury's emotions and fears — rather than the evidence — to decide the case." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008). A prosecutor, however, is not required to present a closing argument devoid of all passion, *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000) (*quoting Williams v. Chrans*, 945 F.2d 926, 947 (7th Cir. 1991)). Here, the prosecutor did not argue that Petitioner should be found guilty out of sympathy for the victim. His comment regarding the condition that the victim's body was found was linked to his argument regarding Petitioner's treatment of the victim while she was alive and his motive for killing her. Essentially, the prosecutor argued that it was not surprising that the person who treated her like garbage when she was alive treated her the same way after he killed her.

Lastly, Petitioner asserts that the prosecutor argued inconsistent theories to the jury. Before trial, the prosecutor sought to introduce evidence that Petitioner had a habit of carrying a knife. But in closing argument, the prosecutor argued that Petitioner's

18

possession of the knife at the time of the murder was evidence of premeditation. Petitioner relies on the case of *Stumph v. Mitchell*, 367 F.3d 594, 611 (6th Cir. 2004), as standing for the proposition that a prosecutor may not advance incompatible theories of guilt at trial.

In *Stumph*, the petitioner asserted that the state's use of inconsistent theories to convict both he and his co-defendant of aggravated murder rendered his guilty plea involuntary. The petitioner sought habeas relief on this basis but the district court denied relief. The Sixth Circuit reversed, holding that the prosecutor's use of two conflicting theories concerning the identity of the shooter to convict both the petitioner and his co-defendant of aggravated murder violated the petitioner's right to due process.

The United States Supreme Court granted certiorari and reversed the Sixth Circuit's opinion. *Bradshaw v. Stumpf*, 545 U.S. 175 (2005). The Supreme Court held that, pursuant to state law, aiders and abettors were equally in violation of the aggravated murder statute if the murder was committed with the specific intent to cause death. *Stumpf*, 545 U.S. at 184. Thus, it reasoned that both men could be found guilty of aggravated murder regardless of who was the actual killer. The *Stumpf* Court concluded that the identity of the triggerman was immaterial to the petitioner's conviction for aggravated murder and did not render his guilty plea involuntary. *Id.* at 184.

Petitioner's case is clearly distinguishable. The prosecutor did not use inconsistent theories to convict two different people of the same crime - that was the due process concern noted by the Court in *Stumph.* Rather, the prosecutor here simply argued that Petitioner's possession of a knife at the time of the murder demonstrated that the crime was premeditated. The prosecutor, though, had already presented evidence that

19

Petitioner habitually carried a knife. The argument was not *inconsistent* with this evidence. Rather, the evidence that Petitioner routinely carried a knife rendered the argument that his possession of the weapon demonstrated premeditation weak - not that it was an improper inference to draw.

Accordingly, even if Petitioner's prosecutorial misconduct claims were not subject to procedural default, they would not provide a basis for granting habeas relief.

### 3. Ineffective assistance of counsel

Petitioner next asserts that he was denied the effective assistance of trial counsel. Specifically, he asserts that his counsel failed to properly object to the hearsay and prior-bad-acts evidence discussed above, and that he was ineffective for failing to object to the instances of prosecutorial misconduct discussed above. Analytically, this issue was relevant and raised by appellate counsel in the Michigan Court of Appeals to respond to the prosecutor's argument that the underlying claims were not preserved for appellate review. But because the Court finds that those claim have no merit, Petitioner's trial counsel was not ineffective for failing to have preserved them in the trial court. *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001).

### 4. Sufficiency of the Evidence

Finally, Petitioner asserts that insufficient evidence was presented at trial to demonstrate beyond a reasonable doubt that he acted with premeditation and deliberation. The Michigan Court of Appeals rejected this claim on the merits:

> Defendant next asserts that the prosecution presented insufficient evidence of premeditation and deliberation to support his conviction of first-degree premeditated murder. We disagree.

20

In reviewing the sufficiency of the evidence to support a conviction, this Court must view the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Fennell*, 677 N.W.2d 66 (Mich. App. 2004). The elements of first-degree murder are that the defendant killed the victim and that the killing was "willful, deliberate, and premeditated." *People v. Bowman*, 656 N.W.2d 835 (Mich. App. 2002), *citing* MICH. COMP LAW 750.316(1)(a). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Plummer*, 581 N.W.2d 753 (Mich. App. 1998). Thus, to establish premeditation and deliberation, the prosecution must show the existence of time between the initial homicidal intent and the ultimate action sufficient to afford a reasonable person time to take a second look. *People v. Gonzalez*, 664 N.W.2d 159 (Mich. 2003). Moreover, where, as here, the evidence establishes a fight and then a killing, there must also be a showing of a thought process which is not disturbed by hot blood. *People v. Plummer*, 581 N.W.2d 753 (Mich. App. 1998).

Here, when viewed in the light most favorable to the prosecution, the evidence at trial was sufficient to establish such process of thought despite the argument that precipitated the killing. In recounting the murder at trial, Shaylene Clark testified that during the minute or so between the time that defendant first produced the knife and actually cut Yatasha's throat, defendant slid the blade lightly across Yatasha's neck while stating that he was going to kill her. Defendant's stated intention, when combined with the time period between his indication of that homicidal intent and the ultimate act of cutting his victim's throat, provided an opportunity for a second look sufficient to support a rational trier of fact in concluding that the killing was both premeditated and deliberate.

*Hubbard, supra*, at 30-32.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(*citing to Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In reviewing a state court's application of the *Jackson* standard, a federal habeas court is required to determine whether the state

21

court's application of the law in reviewing a sufficiency of evidence claim was reasonable. *See Tucker v. Palmer*, 541 F. 3d 652, 666 (6th Cir. 2008). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Adams v. Smith*, 280 F. Supp. 2d 704, 714 (E.D. Mich. 2003).

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(*citing People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. App. 1992). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(*citing People v. Anderson*, 531 N.W.2d 780 (Mich. App. 1995)).

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones*, 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)((*quoting People v. Vail*, 227 N.W.2d 535 (Mich. 1975)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create  a jury question on the issue of premeditation." *Alder v. Burt*, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson*, 159 F. Supp. 2d at 596(*quoting People v. Berthiaume*, 229 N.W.2d 497 (Mich. App. 1975)).

The prosecution presented sufficient evidence for a rational trier of fact to conclude that Petitioner slit the victim's throat with the intent to kill her with premeditation and

deliberation.  The evidence established that Petitioner first ran the blade of his knife across the victim's throat before actually cutting her.  He also announced his intention to kill her after running the knife across her throat.  Viewed most favorably to the prosecution, the short interval following this action gave Petitioner an opportunity for a second-look before deciding to kill the victim.  Also, Petitioner chose to slit the victim's throat rather than cut another area of her body.  Under Michigan law, premeditation may also be inferred from wounds inflicted on vital parts of the victim's body. *See Lundberg v. Buchkoe*, 338 F. 2d 62, 69 (6th Cir. 1964).  Additionally, the fact that Petitioner took the victim to an abandoned house and did not attempt to seek medical help for the victim after cutting her could lead a rational trier of fact to conclude that Petitioner acted with premeditation and deliberation.

There was sufficient evidence for a rational trier of fact to determine that Petitioner committed the murder with premeditation and deliberation.   Petitioner is not entitled to habeas relief on his first claim.

Accordingly, even if the claims Petitioner raised in his appeal of right were not subject to procedural default for failing to file a timely appeal in the Michigan Supreme Court, the claims would nevertheless not provide a basis for granting habeas relief because they are without merit.

### B. Claims Raised in Petitioner's Motion for Relief From Judgment

Petitioner's fifth, sixth, and seventh claims were first raised in the Michigan Courts in his motion for relief from judgment and the appeal that followed it.  Petitioner's fifth claim asserts that his appellate counsel was ineffective for, (1) failing to have DNA testing performed on hair found in the remains of the victim's hand, (2) failing to raise an issue

23

alleging that Clark's testimony was coerced, and (3) failing to argue that trial counsel was ineffective for failing to raise the prior two challenges at trial. Petitioner's sixth claim asserts that cumulative error of these claims denied Petitioner's right to a fair trial. Petitioner seventh claim asserts as a separate substantive claim that Clark's trial testimony was the product of police coercion. Respondent asserts that review of these claims is also barred by procedural default because MICH. CT. R. 6.508(d)(3) required Petitioner to present the claims to the state courts during his direct appeal.

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

The Sixth Circuit has recently held that the form orders used by the Michigan appellate courts in this case are unexplained because they are ambiguous as to whether they refer to a procedural default or the denial of right on the merits. *Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010) (en banc). Under *Guilmette*, the Court must "look through" the unexplained orders of the Michigan appellate courts to the decision of the state trial court to determine the basis for the denial of state post-conviction relief.

24

However, the Supreme Court very recently stated that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 2011 U.S. LEXIS 912 (U.S. Jan. 19, 2011). Under *Harrington*, there is an argument to be made that whether or not the trial court relied on procedural grounds to deny Petitioner relief, the Michigan Supreme Court's unexplained order presumptively constitutes an adjudication on the merits that supercedes the basis for the trial court decision. In other words, under *Harrington*, it may be the case that even where the trial court explicitly denies relief on procedural grounds, a subsequent unexplained order rendered by the Michigan Supreme Court precludes imposition of a procedural default.

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while a procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); see also, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walters v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Here, because of the uncertainty of the application of *Guilmette,* the safer course is to proceed to the merits of Petitioner's claims.

Petitioner claims that his trial counsel was ineffective for not requesting that DNA testing be performed on hairs found with the victim's body. This claim is based entirely on his speculation that the results of such testing would exculpate him. But, even the results of testing showed that the hair came from someone other than Petitioner, there is not a reasonably probability that it would have resulted in his acquittal. Evidence was presented at trial that at least three men - none of whom were Petitioner - contributed to DNA found in the victim's panties. It should be recalled that Petitioner picked-up the victim and Clark from a house in which they engaged in various sex acts with multiple men for a period of a few days. The jury convicted Petitioner despite this DNA evidence. There is not a reasonable probability that the outcome of Petitioner's trial would have been different had counsel pursued this line.

Next, Petitioner's claim that Clark was coerced to testify and the claim that his trial counsel was ineffective for failing to move to suppress her statements to police faced the problem that Petitioner did not have standing to raise the challenge. *Johnson v. Bell*, 525 F.3d 466, 479-480 (6th Cir. 2008). Furthermore, Petitioner's trial counsel thoroughly cross-examined Clark about the circumstances surrounding her multiple statements to police and the fact that they contained inconsistencies.

Finally, Petitioner's cumulative error claim does not provide a basis for granting habeas relief. The Sixth Circuit has noted that the United States Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief. *Hoffner v. Bradshaw,* 622 F.3d 487, 513 (6th Cir. 2010). Petitioner is therefore not entitled to relief based on this claim.

26

Petitioner has failed to demonstrate that his appellate counsel was ineffective for failing to raise these claims. Furthermore, even if the claims raised in Petitioner's motion for relief from judgment were not subject to procedural default, they would not provide a basis for granting habeas relief.

### V. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must:

> issue or deny a certificate of appealability when it enters a final order adverse to the applicant.... If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).
> Rule 11, Rules Governing Section 2254 Proceedings.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted).

27

The Court finds that reasonable jurists could debate whether this Court correctly denied Petitioner's claim regarding the admission of hearsay statements (habeas claim #1). The Michigan Court of Appeals found that the evidence was erroneously admitted, but that the error was harmless. While this Court agrees with that result, the concession of error by the state court demonstrates that the issue is at least debatable enough that a certificate of appealability shall issue.

The Court found that Petitioner's other claims are meritless. A certificate of appealability will therefore be denied with respect to Petitioner's other claims.

The standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Because an appeal could be taken in good faith, Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.   ORDER

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

28

IT IS FURTHER ORDERED That a Certificate of Appealability is **GRANTED** with

respect to Petitioner's first habeas claim asserting the erroneous admission of hearsay

evidence but **DENIED** with respect to his remaining claims.

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to appeal *in

forma pauperis.*


s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated:  January 24, 2011

I hereby certify that a copy of the foregoing document was served upon parties/counsel
of record on January 24, 2011, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Secretary

29